UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
EL PASO DIVISION

| | |
|---|---|
| **LOTUS QUINTANILLA, et al.** § | |
| *Plaintiffs*, § | |
| v. § | |
| § | EP-23-CV-00432-DCG |
| **FRANCISCO JAVIER PEREZ** § | |
| **VASQUEZ, d/b/a/ Transportes Centauro** § | |
| *Defendant*. § | |

**ORDER**

Before the Court is "Defendant's *Daubert* Motion to Exclude Portions of Testimony of Plaintiffs' Expert Jeffrey T. Kiel, Ph.D." ("Def.'s Mot."), submitted September 3, 2024. (ECF No. 26). On September 3, 2024, Plaintiffs Lotus Quintanilla and Sarelah Aguilar ("Plaintiffs") submitted an "Opposition Response to Defendant's *Daubert* Motion" ("Pls.' Opp'n Resp."). (ECF No. 28). On September 17, 2025, Defendant filed a "Reply to Plaintiff's Response" ("Def.'s Reply"). (ECF No. 33).

On September 10, 2024, this matter was referred to this Court pursuant to 28 U.S.C. § 636(b)(1)(A) and Rule 1(c) of Appendix C of the Local Rules of the United States District Court for the Western District of Texas for an order by Senior United States District Judge David C. Guaderrama ("Judge Guaderrama"). (ECF No. 27).

For the reasons set forth below, the Court **ORDERS** that Defendant's *Daubert* Motion (ECF No. 26) be **DENIED**.

I.     **BACKGROUND**

This is a negligence personal injury lawsuit arising from a commercial semi-truck/personal vehicle rear-end accident which occurred on August 17, 2022, in El Paso, Texas. Def.'s Mot. 1, ECF No. 26. Plaintiff, Ms. Quintanilla, was the passenger in the personal vehicle. *Id.* Defendant

1

is a commercial trucking company that employed the driver involved in the accident. *Id.* This Court has diversity jurisdiction over the case and venue is proper. Removal Notice 2–4, ECF No. 2–4.

Ms. Quintanilla is a 48-year-old self-employed hair stylist who alleges extensive back pain following the August 17, 2022, accident. Expert Report 20, 23, 8–18, ECF No. 28-1. On July 30, 2024, Plaintiffs filed a Notice of Expert Designation, designating Dr. Kiel as an expert witness. Notice Expert Designation 7–8, ECF No. 19. Dr. Kiel is a board-certified vocational rehabilitation expert retained to testify that due to her injuries from the accident, Ms. Quintanilla may only work "on a part-time basis at a 50% capacity as compared to her pre-injury earnings capacity" before the accident. *Id.* 7.

On September 3, 2024, Defendant filed the instant *Daubert* motion to exclude Dr. Kiel's expert testimony. Def.'s Mot. Defendant maintains that Dr. Kiel's testimony should be excluded because his calculations of Ms. Quintanilla's pre-injury and post-injury earnings capacity are not based on a reliable foundation, as required by Federal Rule of Evidence 702.[1] *Id.* 1. Specifically, Defendant opines that Dr. Kiel's determination of Ms. Quintanilla's pre-injury and post-injury earnings capacity is unreliable because Dr. Kiel "ignored evidence of Plaintiff's *actual* earnings set forth in Plaintiff's Tax Returns and income and financial reports" and instead "opted to merely rely on general data" from Department of Labor statistics. Def.'s Mot. 3, 11.

For the reasons set forth below, the Court disagrees and finds that Dr. Kiel's methodology is reliable. Specifically, the Court finds that Dr. Kiel was permitted to rely on Department of Labor

---

[1] Federal Rule of Evidence 702 sets out that a witness who is qualified as an expert may testify if the witness can demonstrate to the court that it is more likely than not that: "(a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (b) the testimony is based on sufficient facts or data;(c) the testimony is the product of reliable principles and methods; and (d) the expert's opinion reflects a reliable application of the principles and methods to the facts of the case." Fed. R. Evid. 702.

2

data to calculate Plaintiff's earnings capacity and that Dr. Kiel's methodology fulfills the *Daubert* factors.

## II. LEGAL STANDARD

The admissibility of expert testimony is governed by Federal Rule of Evidence 702. Federal courts function as gatekeepers and determine whether expert testimony should be presented to the jury. *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 590-93 (1993). "This gate-keeping obligation applies to all types of expert testimony, not just scientific testimony." *Pipitone v. Biomatrix, Inc.*, 288 F.3d 239, 244 (5th Cir. 2002) (citing *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 147 (1999)).

When deciding to admit or exclude expert testimony, the court considers multiple factors, exemplified in *Daubert*, including (1) whether the expert's theory or technique can be or has been tested; (2) whether the theory or technique has been subjected to peer review and publication; (3) the known or potential rate of error of the challenged method; and (4) whether the theory or technique is generally accepted in the relevant scientific community. *Daubert*, 509 U.S. at 593-94; *Pipitone*, 288 F.3d at 244. However, the *Daubert* factors are not "a definitive checklist or test." *Daubert*, 509 U.S. at 593.

When evaluating *Daubert* challenges, courts focus "on [the experts'] principles and methodology, not on the conclusions that [the experts] generate." *Id.* at 594. Accordingly, the decision to allow or exclude experts from testifying under *Daubert* is committed to the sound discretion of the district court. *Barbe v. Gov't Employees Ins. Co.*, No. 4:13-CV-441, 2014 WL 12601152, at *1-2 (E.D. Tex. June 30, 2014) (citing *St. Martin v. Mobil Exploration & Producing U.S., Inc.*, 224 F.3d 402, 405 (5th Cir. 2000)).

### III.    ANALYSIS

In the instant Motion, Defendant seeks to exclude Dr. Kiel's testimony on Ms. Quintanilla's pre-injury and post-injury earnings capacity. Defendant asserts that Dr. Kiel's testimony should be excluded because it is not based on a sufficient "foundation of reliable and relevant facts." Def.'s Mot. 3. Specifically, Defendant maintains that Dr. Kiel's determination of Ms. Quintanilla's earnings capacity is unreliable because Dr. Kiel "ignored evidence of Plaintiff's *actual* earnings set forth in Plaintiff's Tax Returns and income and financial reports" and instead "opted to merely rely on general data" from Department of Labor statistics. *Id.* 3, 11.

In response, Plaintiff maintains that Dr. Kiel's opinion is admissible because "an expert witness is not required to consider evidence of actual earnings to offer the expert's opinion and conclusions regarding a plaintiff's alleged loss of earning capacity." Pls.' Opp'n Resp. 3. In other words, Dr. Kiel was permitted to rely on Department of Labor data. Further, Plaintiff asserts that Dr. Kiel's methodology is reliable because he used "peer reviewed industry accepted practices in his profession to base his opinions." *Id.* at 7. As articulated below, the Court agrees with Plaintiff and finds that Dr. Kiel's methodology is reliable.

**1.    Dr. Kiel was permitted to use Department of Labor statistics to calculate Ms. Quintanilla's pre-injury and post-injury earnings capacity.**

Dr. Kiel's use of Department of Labor statistics to calculate Ms. Quintanilla's pre-injury and post-injury earnings capacity is a reliable methodology under *Daubert*. District Courts in the Fifth Circuit affirm the same, noting that an economic expert may properly calculate an individual's earnings capacity by relying on Department of Labor data. *See Fernandez v. Transp. Designs, Inc.*, No. SA-16-CA-022-OLG, 2017 WL 2999706, at *2 (W.D. Tex. Apr. 5, 2017) (finding that economic expert's opinion on plaintiff's earnings capacity was reliable where expert relied on Department of Labor data, Census Bureau data, and plaintiff's deposition testimony);

*Galvan v. City of San Antonio*, No. SA-07-CA-371-OG, 2008 WL 5504697, at *1–2 (W.D. Tex. Sept. 17, 2008) (holding that expert's opinion on decedent's earnings capacity was reliable because expert considered Department of Labor and Census Bureau data, employment records, and deposition testimony).  This is so because "economic experts routinely assume certain facts that in reality remain in question and make calculations based on those assumptions." *Malone v. Georgia-Pac. LLC*, No. 9:22-CV-140-MJT, 2024 WL 556638, at *3 (E.D. Tex. Jan. 8, 2024).

Here, Dr. Kiel calculated Ms. Quintanilla's pre-injury and post-injury earnings capacity by considering Department of Labor data, Plaintiff's medical evidence, and vocational testing and interviewing with Plaintiff.  Expert Report 7–19, 37–40.  Because an economic expert is permitted to use Department of Labor data to calculate an individual's earnings capacity, the Court finds that Dr. Kiel's methodology was reliable under *Daubert*.

### 2. Dr. Kiel's methodology was reliable because it is subject to peer review and is generally accepted in the scientific community.

Furthermore, Dr. Kiel's methodology was reliable because it fulfills the *Daubert* factors. The *Daubert* factors include (1) whether the expert's theory or technique can be or has been tested; (2) whether the theory or technique has been subjected to peer review and publication; (3) the known or potential rate of error of the challenged method; and (4) whether the theory or technique is generally accepted in the relevant scientific community.  *Daubert*, 509 U.S. at 593–94; *Pipitone*, 288 F.3d at 244.  Notably, the *Daubert* factors are not "a definitive checklist or test."  *Daubert*, 509 U.S. at 593.

Here, Dr. Kiel's methodology is supported by the *Daubert* factors because his technique is subject to peer review and is generally accepted in the scientific community.  In an Expert Affidavit dated September 10, 2024, Dr. Kiel affirmed that his use of Department of Labor statistics to calculate Ms. Quintanilla's earnings capacity is a "peer-reviewed industry accepted practice[]."

5

Dr. Kiel Aff. 2, ECF No. 28-2. Furthermore, Dr. Kiel confirmed that calculating earnings capacity by considering Department of Labor data, conducting vocational diagnostic interviews, and gathering data on her educational background is consistent with "industry standards" in the vocational expert community. *Id.* 2–3. Accordingly, Dr. Kiel's methodology is reliable because it fulfills the *Daubert* factors by being subject to peer review and accepted in the relevant scientific community.

## IV.   CONCLUSION

For the foregoing reasons, the Court **ORDERS** that Defendant's *Daubert* Motion (ECF No. 26) be **DENIED**.

**SIGNED** and **ENTERED** this 27th day of August 2025.

_____
**MIGUEL A. TORRES**
**UNITED STATES MAGISTRATE JUDGE**